UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

01 JUN -7 AM 9: 25

STEPHANIE MEETZE,

    Petitioner,

v.                                 **CIVIL NO. 98-302 JP/DJS**

PENNY LUCERO, Warden, *et al.*,

    Respondents.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

1. This a proceeding on a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. §2254. Petitioner seeks to vacate the judgment and sentence entered in CR 94-704 and CR 95-275 in the Third Judicial District, Doña Ana County, of New Mexico. In that proceeding, Petitioner was convicted following a jury trial of two counts of Attempted First Degree Murder, two counts of Criminal Solicitation to Commit First Degree Murder, one count of Aggravated Battery with a Deadly Weapon, and one count of Conspiracy to Commit First Degree Murder. Petitioner was sentenced to a term of imprisonment of twenty-five years, to be followed by two years on parole.

2. Petitioner challenges her conviction and sentence on three grounds. Petitioner's first ground for relief is that she was afforded ineffective assistance of counsel. Petitioner's second

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.



ground is that she has been subjected to double jeopardy. As her third ground for relief, Petitioner asserts that she was denied her Sixth Amendment right to confront witnesses against her by admission of the out-of-court statement of an alleged co-conspirator. This Court directed Respondent to provide the Record Proper of the state court proceedings, which included forty-eight audiotapes of state court proceedings. In addition, upon approval by the Court Petitioner filed professionally made transcripts of the tapes of her jury selection and trial. The parties then submitted briefs regarding the merits of the Petition, as well as supplemental exhibits. The Court has reviewed these materials in making its proposed findings.

3.  As a preliminary matter, 28 U.S.C. §2254(b)(1) and (c) require that a state prisoner seeking relief must exhaust state remedies before seeking to obtain relief in a federal *habeas* proceeding.  See generally, Rose v. Lundy, 455 U.S. 509 (1982). Respondent concedes that Petitioner has exhausted her state court remedies as to the claims raised in her *habeas* petition. However, Respondent does not concede exhaustion regarding all of the arguments raised in Petitioner's memorandum in support of that petition.

4. Petitioner's convictions arose out of a series of events occurring in 1994. At that time, Petitioner was married to Luis Barrera, a Las Cruces city police officer. Petitioner and Barrera had been married since 1987, although they divorced for some time during that period. In 1994, Petitioner and Barreras were again in the process of getting a divorce. Petitioner and Barrera engaged in a struggle on July 8th of that year. According to Barrera, Petitioner shot him when he returned to their trailer house after an argument. According to Petitioner, Barrera shot himself as they struggled for the gun when he threatened suicide. Barrera had been directed to complete counseling at the behest of the Las Cruces Police Department following thoughts of suicide the previous March.

2

Barrera survived wounds to his left hand and abdomen.

Petitioner was not immediately charged with any crime following the July incident. In early November, 1994, Barrera was living with his mother and two teenage brothers while recovering from his wounds. A man knocked at the door and asked to speak to Barrera. When Luis Barrera went to the door, the man shot him. Barrera again survived his wounds and identified the shooter as "one of the Morales brothers" and gave a positive identification of Luis Morales as his assailant following a video lineup. Barrera's brother who answered the door also identified Luis Morales as the shooter at a photo array and at a live line-up. Luis Morales was arrested and charged with shooting Barrera. Some time later, Luis Morales older brother Remundo Morales, who was then incarcerated, told police that he had arranged the shooting. Remundo Morales told police that Petitioner had asked him to kill Barrera and had given him a gun and $500 toward that end. Remundo Morales further stated that he kept the money and the gun but that another man, Conrad Salazar, volunteered to kill Barrera. Remundo Morales said he supplied Salazar with a gun other than the one he received from Petitioner, as well as a photo of Barrera and Barrera's address. Morales said that Salazar shot Barrera and left the scene in a car driven by a third man, Jeffrey Martinez. Charges were dropped against Luis Morales and, subsequently, Conrad Salazar, Jeffrey Martinez, and Petitioner were arrested.

Petitioner was charged with Attempted First Degree Murder, Conspiracy to Commit First Degree Murder, and Criminal Solicitation to Commit Murder in the November shooting. In a separate proceeding, she was indicted on charges of Attempted First Degree Murder, Criminal Solicitation to Commit First Degree Murder, and Aggravated Battery with a Deadly Weapon based upon the July incident. The state filed a motion to join the two proceedings and Petitioner's trial counsel filed a motion to exclude evidence of the July shooting from the trial on the November

shooting. The trial court denied the state's motion for joinder and severed Petitioner's trial from

those of Martinez and Salazar. The trial court also denied Petitioner's motion *in limine*, ruling that

it would permit evidence of the July incident in the trial on the November shooting. Following that

ruling, Petitioner's counsel consented to the joinder of both cases for trial. Petitioner was afforded

a five day jury trial and was convicted on the charges noted above.

## INEFFECTIVE ASSISTANCE OF COUNSEL

5. Petitioner asserts that her trial counsel was ineffective for several different reasons. First,

she contends that her counsel improperly consented to the joinder of trial on charges for crimes

committed four months apart and subject to different defenses. Next, she contends that her counsel

was ineffective for several different courses of action taken at trial, including not presenting any

witnesses or presenting a defense other than the cross-examination of the state's witnesses; not

seeking a change of venue, not having Petitioner take a polygraph test, failing to show that Las

Cruces Police Department witnesses had a conflict of interest, failing to show evidence of mutual

hostility between Petitioner's husband and a cooperating witness, and failing to utilize evidence of

blood on a door to show that Petitioner was defending herself in the first incident.

6. To prove that counsel was constitutionally ineffective, a *habeas* petitioner must show "that

counsel's performance was deficient" and "that the deficient performance prejudiced the defense."

Strickland v. Washington, 466 U.S. 668, 687 (1984); Stafford v. Saffle, 34 F.3d 1557, 1562 (10th

Cir. 1994), cert. denied, 115 S.Ct. 1830 (1995). Pursuant to the second prong of the Strickland test,

a petitioner demonstrates prejudice when he shows that "but for counsel's unprofessional errors, the

result of the proceeding would have been different." Strickland, 466 U.S. at 694; see also Harris v.

Champion, 15 F.3d 1538, 1569 (10th Cir. 1994) (quoting same). However, a court may not set aside

4

a conviction solely because the outcome would have been different absent counsel's deficient performance. Rogers v. United States, 91 F,3d 1288, 1392 (10th Cir. 1996). Rather, a *habeas* petitioner must demonstrate that counsel's deficient performance rendered the trial fundamentally unfair or unreliable. Id. (citations omitted).

      7. Petitioner's trial counsel successfully opposed the state's motion for a joint trial of the two incidents. Petitioner's Memorandum Brief, Exhibit 2. However, the trial court denied Petitioner's motion in *limine* to exclude evidence of the first incident from her trial for the second shooting. The trial court agreed with the state's argument that the evidence was relevant to Petitioner's state of mind and intent and ruled it admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Id. Following that ruling, Petitioner's trial counsel stipulated to the joinder of the two trials. Petitioner argues that counsel's tactical decision to agree to the joinder was not a reasonable decision because the defense strategy should have been different for each trial and because counsel abandoned the possibility of appellate review of the trial judge's decision to permit evidence from the July incident to be introduced at her trial for the November shooting. In an affidavit filed April 13, 2001, Petitioner's trial counsel stated that she agreed to a single trial in order to avoid trying the July incident to a judge whom she felt was prejudiced against Petitioner. Deference should be given to counsel's tactical judgments. Osborne v. Shillinger, 861 F.2d 612, 625 (10th Cir. 1988); See, United States v. Ortiz Oliveras, 717 F.2d 1, 3 (1st Cir. 1983) ("[T]actical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance of counsel."). In this instance, Petitioner's trial counsel made the tactical judgment that joinder of the trials was preferable to separate trials where one would be held in front of a judge from whom she expected adverse rulings.

According to counsel's affidavit, she decided to agree to the joinder after consulting with Petitioner and Petitioner's family.

8. Plaintiff's claim that she was prejudiced by counsel's failure to preserve the issue of admission of evidence from the July incident at trial of the November incident for appeal does not entitle her to *habeas* relief. To obtain federal *habeas* relief on such a claim, she must show that the issue foregone on appeal was certain to result in a reversal by the appellate court. See Banks v. Reynolds, 54 F.3d 1508, 1515 (10th Cir.1995) ("[A]ppellate advocate may deliver deficient performance and prejudice a defendant by omitting a dead-bang winner, even though counsel may have presented strong but unsuccessful claims on appeal.") (citations and quotations omitted); United States v. Cook, 45 F.3d 388, 395 (10th Cir.1995) (defining "dead-bang winner" as "an issue which was obvious from the trial record, ... and one which would have resulted in a reversal on appeal"). The admission of evidence of other crimes to show motive or intent falls within the discretion of the trial court and does not constitute a "dead-bang winner" appellate issue in this case. Given that fact and counsel's reasoned tactical basis for agreeing to the joinder to avoid one trial in front of a particular judge, Petitioner cannot show that agreeing to a single trial amounted to ineffective assistance of counsel.

9. Plaintiff's other attacks on counsel's performance amount to nothing more than further challenges to her attorney's trial strategy. In her affidavit filed in support of the petition on April 13, 2001, Petitioner's trial counsel states that she should have asked for a change of venue. Affidavit of Carmen Garza filed April 13, 2001 (Docket No. 31). As noted, *supra*, trial counsel also states that she agreed to a single trial to avoid trying one of the cases against Petitioner to a particular judge. Id. She states that, in hindsight, she should not have agreed to the joinder. Id. However, an

ineffective assistance of counsel claim is analyzed from the perspective of counsel at the time and cannot be predicated upon the distorting effects of hindsight. Brecheen v. Reynolds, 41 F.3d 1343, 1365 (10th Cir. 1994) cert. denied, 515 U.S. 1135 (1995) (quotes and citations omitted).

10. To establish ineffective assistance with regard to the failure to move for a change of venue due to pretrial publicity, Petitioner must show, at a minimum, that the trial court would have or should have granted a change of venue motion. This, in turn, requires her to show actual or presumed prejudice on the part of jurors. See Hale v. Gibson, 227 F.3d 1298, 1332 (10th Cir. 2000); Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000), cert. denied, 121 S.Ct. 1114 (2001). Actual prejudice requires showing that one or more jurors believed before trial that Petitioner was guilty and that they could not set these pre-formed opinions aside at trial. Id. Presumed prejudice requires showing that "an irrepressibly hostile attitude pervaded the community." Hale, 227 F.3d at 1332 (quotation omitted). Allegations of presumed prejudice based merely on pretrial newspaper articles, such as those presented by Petitioner, do not approach the high standard necessary to warrant a change in venue. See Id. ("Simply showing that all the potential jurors knew about the case and that there was extensive pretrial publicity will not suffice to demonstrate that an irrepressibly hostile attitude pervaded the community.") (quotation omitted).

11. Plaintiff faults her attorney for failing to call expert witnesses such as a firearms expert. However, as noted in her brief, the testimony of the state's expert witnesses regarding forensic analysis of blood spatter patterns on the scene, clothes, and gun were more consistent with her version of the events of July 8, 1994 than they were with Luis Barrera's version. The testimony of the state's expert witnesses did not significantly implicate Petitioner. Consequently, the tactical decisions not to retain a firearm expert was reasonable.

12. Petitioner asserts that counsel should have questioned prospective jurors during *voir dire* regarding their exposure to pre-trial publicity of the incidents which formed the basis of the charges against her. Petitioner notes that a number of people on the venire panel and five of the jurors indicated that they had seen some report of the incidents. Petitioner contends that the trial court only asked a conclusory question whether anything about the publicity preceding the trial that would lead the prospective jurors to believe they could not be fair and impartial. However, trial counsel's decision not to ask follow-up *voir dire* questions cannot afford Petitioner *habeas* relief because Petitioner has not indicated that any of the jurors were in fact influenced by pre-trial publicity. Counsel may be ineffective for failing to attempt to remove from the jury an individual who has been established on *voir dire* to be biased. Hale v. Gibson, 227 F.3d 1298, 1319 (10th Cir.2000). However, to show that a juror was biased, Petitioner "must show more than that the juror had a preconceived notion of guilt; he must show that the juror had such a fixed opinion that he or she could not judge impartially." Id. at 1320. That conclusion is contradicted by the jurors' representation to the trial judge that they could be fair and impartial. Absent some indication of the requisite bias, Petitioner cannot show prejudice because she cannot show that the result of her trial would likely have been different but for counsel's alleged deficient performance.

13. Petitioner also contends that counsel was ineffective for failing to call her investigator, who had interviewed Socorro Franco, as a witness. Petitioner asserts that Franco's statements during those interviews were inconsistent with her testimony at trial and that the investigator could have impeached her by that prior inconsistent testimony. The decision of what witnesses to call is a tactical one within trial counsel's discretion. Minner v. Kerby, 30 F.3d 1311, 1317 (10th Cir. 1994). Petitioner's trial counsel cross-examined Franco regarding the changes she made in her story and

while Petitioner may now disagree with the decision to rely upon that cross-examination to impeach her, she cannot show that presenting an additional witness would have changed the result of the trial.

14. Petitioner asserts that counsel was ineffective for failing to show that the Las Cruces Police Department had a conflict of interest regarding the investigation of the shooting of one of their own officers. However, Petitioner does not describe how counsel was to make such a showing or that there was an actual conflict of interest which resulted in a flawed investigation. She merely asserts that a conflict of interest must have existed. Absent some showing of prejudice such as a demonstration that her trial was rendered unreliable or that the investigation was flawed, Petitioner cannot prevail on this ineffective assistance of counsel claim.

15. Petitioner contends that her trial counsel was ineffective for failing to present evidence of mutual hostility between the police officer victim Luis Barrera and the state's witness, Reymundo Morales. However, evidence was presented at trial regarding the officer's prior encounters with Reymundo Morales and Petitioner's counsel argued that Morales had reason to dislike Barrera because of the officer's discovery of an illegal weapon in Morales' possession. Further, trial counsel impeached Morales by her cross-examination of him and emphasized his motives to lie during her closing argument. Trial counsel's arguments for the very point which Petitioner claims she should have made falls short of deficient performance.

16. Petitioner also argues that her trial counsel failed to utilize evidence of blood on the door of the trailer home to show that she was defending herself in the July 8, 1994 incident. However, the inferences which should be drawn from the location of blood on the door of the trailer home were argued by both sides. The prosecution argued that the evidence supported a conviction. Petitioner's counsel argued that the blood was consistent with her version of events wherein Luis Barrera went

9

to the door of the trailer and tried to call his police dog to attack Petitioner. Petitioner's trial counsel

pointed out in her closing argument that Barrera's hand was bleeding but no blood was found on the

door handle. Petitioner's disagreement with her counsel's tactics does not raise an inference of

ineffective assistance of counsel.

**Double Jeopardy**

17. Petitioner's claims regarding double jeopardy consist of the assertion that her convictions

for aiding and abetting first degree murder and for conspiracy to commit first degree murder were

based upon the same conduct and violate the constitutional prohibition of multiple punishment for

a single crime. Petitioner relies upon Lucero v. Kerby, 133 F.3d 1299, 1316 (10th Cir.) cert. denied,

523 U.S. 1110 (1998), in support of her argument.

18. Double jeopardy does not occur so long as each punished offense requires proof of a fact

that the other does not. Yparrea v. Dorsey, 64 F.3d 577, 579 (10th Cir. 1995). However, "[i]n

assessing whether a state legislature intended to prescribe cumulative punishments for a single

criminal incident, [federal courts] are bound by a state court's determination of the legislature's

intent." Birr v. Shillinger, 894 F.2d 1160, 1161 (10th Cir.1990); see also, e.g., Lucero v. Kerby,

133 F.3d at 1316 (asserting that federal court in *habeas corpus* proceeding should defer to state

court's determination of separate offenses for double jeopardy purposes); Thomas v. Kerby, 44 F.3d

884, 887 (10th Cir.1995) (same).   In other words, if the highest state court determines that the

legislature intended to punish separate offenses cumulatively, a federal habeas court must defer to

that conclusion. See Birr, 894 F.2d at 1161.

19. Petitioner's double jeopardy claim was rejected by the New Mexico courts. Answer,

Exhibit E. The New Mexico Court of Appeals held that attempted first degree murder and conspiracy

to commit first degree murder are not subsumed within one another and noted that the crimes consisted of different elements. Id. That Court also held that the offenses were not designed to protect the same societal interests. Id. Given the deferential standard of review owed the state court decision pursuant to 28 U.S.C. 2254(d) see Williams v. Taylor, 120 S.Ct. 1495, 1522 (2000), and the deference owed the state court's determination of separate offenses for double jeopardy purposes, see Lucero, 133 F.3d at 1316, Petitioner cannot succeed on her double jeopardy claim.

## RIGHT TO CONFRONT WITNESSES

20. Petitioner contends that she was denied her Sixth Amendment right to confront witnesses against her when the trial court admitted out-of-court statements by her alleged co-conspirator, Conrad Salazar, via the testimony of Reymundo Morales. Petitioner argues that the trial court did not find that Salazar was unavailable or that the statements had any indicia of reliability. She further argues that the fact that the statements in question were made against penal interest does not make them reliable. Respondent argues that Petitioner only preserved this ground for review as to a statement from Salazar to Morales that "the mission was accomplished", rather than all of the statements discussed in Petitioner's brief. Respondent contends that Petitioner did not present her arguments regarding other statements attributed to Salazar to the state courts. The Court agrees that Petitioner can only present the facts in support of the claim which were presented to the state courts. See Jones v. Hess, 681 F.2d 688, 694 (10th Cir. 1982)(Although "bits of evidence" which were not before the state courts will not render a claim unexhausted, where a federal *habeas* petitioner presents newly discovered evidence or other evidence not before the state courts such as to place the case in a significantly different posture, the state courts must be given an opportunity to consider the evidence)(citations omitted); Demarest v. Price, 130 F.3d 922, 932 (10th Cir. 1997)(same).

11

21. The New Mexico Court of Appeals held that the "mission" statement was not hearsay. Answer, Exhibit E. The statement which was entered into evidence was made by Salazar to Reymundo Morales regarding the progress of the plan to kill Luis Barrera. The state Court of Appeals held that the statement was not introduced in order to prove its content but rather the fact of communication between Salazar and Reymundo Morales. The New Mexico Court held that the communication was an act in furtherance of the conspiracy to kill Luis Barrera.

22. Petitioner's constitutional rights were not violated by the admission of the statements of Conrad Salazar through the testimony of Reymundo Morales. The statements in question would have been admissible under the standards of Fed.R.Ev. 801(d)(2)(E). Further, the requirements for admission of evidence under Fed.R.Evid. 801(d)(2)(E) are identical to the constitutional requirements of the Confrontation Clause. See Bourjaily v. United States, 483 U.S. 171, 182 (1987); United States v. Molina, 75 F.3d 600, 603 (10th Cir.1996). In order to admit co-conspirator statements under Bourjaily, "there need only be some independent evidence linking the defendant to the conspiracy." United States v. Martinez, 825 F.2d 1451, 1453 (10th Cir.1987). Such independent evidence may be sufficient even when it is not "substantial." United States v. Rascon, 8 F.3d 1537, 1541 (10th Cir.1993). The Tenth Circuit Court of Appeals defines "independent evidence" as "evidence other than the proffered [coconspirator] statements themselves." Martinez, 825 F.2d at 1451.

23. In this instance, the state introduced the firearm purchased by Luis Barrera for Petitioner and then given to Reymundo Morales in order to affect Barrera's murder. In addition, the testimony of Socorro Franco regarding Petitioner's efforts to get Reymundo Morales to kill Luis Barrera was introduced at trial. This independent evidence links Petitioner to the conspiracy to kill Luis Barrera.

12

Consequently, the statements by Salazar to Morales that the mission had been accomplished would be admissible under the Federal Rules of Evidence and satisfy the requirements of the Confrontation Clause as set out in Bourjaily. The pistol was introduced into evidence prior to any testimony regarding statements by Conrad Salazar. However, the testimony of Socorro Franco was not elicited until after the testimony by Reymundo Morales regarding Salazar's statements. The trial court did not hold a hearing regarding the existence of a conspiracy, membership in a conspiracy, or whether the statements were made in furtherance in a conspiracy. Nonetheless, the evidence presented at trial establishes each of those elements necessary to the introduction of Salazar's statements and that evidence could have been presented in a separate hearing.

24. Petitioner also argues that she never met Salazar or knew that he was going to be involved in the effort to kill Luis Barrera; however, the state was not required to prove that Petitioner knew all of the members of the conspiracy. See United States v. Lopez, 100 F.3d 113, (10th Cir. 1996)(Government was not required to establish that defendant knew identities of all participants in a conspiracy or precise nature of their participation).

**EVIDENTIARY HEARING**

25. Petitioner requests that she be afforded an evidentiary hearing regarding her claims. While an independent review of the state court record may be necessary when a state court has not articulated its reason for denying post-conviction relief on the merits, see Aycox v. Lytle, 176 F.3d 1174, 1177-78 (10th Cir. 1999), a §2254 petitioner is entitled to an evidentiary hearing in Federal Court only where she indicates specific facts she would prove through a hearing which would entitle her to relief. Boyd v. Ward, 179 F.3d 904, 925 (10th Cir. 1999) cert. denied 538 U.S. 1167 (2000). While Petitioner sets forth various claims for which she asserts an evidentiary hearing would be

13

required on pages 25 and 26 of her Memorandum Brief filed June 11, 1999, those claims have been dealt with above on the basis of the state court record.

26. 28 U.S.C. §2254(e)(2)provides that "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that (A) the claim relies on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." In this case, Petitioner did not fail to develop the factual bases of the claims considered in these proposed findings. She was not afforded an evidentiary hearing in state court. Accordingly, 28 U.S.C. § 2254(e)(2) does not apply. See Miller v. Champion, 161 F.3d 1249, 1253 (10th Cir. 1998). In this circumstance, Petitioner is entitled to an evidentiary hearing only if she can show that"[her] allegations, if true and if not contravened by the existing factual record, would entitle [her] to *habeas* relief." Id. (citation omitted). Petitioner is not entitled to an evidentiary hearing because the state court record contains sufficient facts to resolve all of her claims.

**RECOMMENDED DISPOSITION**

That the petition be denied and this matter dismissed with prejudice.

_____
DON J. SVET
UNITED STATES MAGISTRATE JUDGE